UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KARL B. MOLDEN                                         CIVIL ACTION

VERSUS

EAST BATON ROUGE PARISH                     NO.: 14-00351-BAJ-EWD
SCHOOL BOARD

RULING AND ORDER

Before the Court is Defendant's **Motion for Summary Judgment (Doc. 34)**, seeking a ruling from this Court dismissing all claims advanced by the Plaintiff. (Doc. 34 at p. 1). Plaintiff filed a response that asserts that summary judgment should not be granted, and raises objections against Defendant's evidence. (Doc. 40). For reasons explained fully herein, the Motion is **GRANTED**.

I.   BACKGROUND

Plaintiff became a school counselor for the East Baton Rouge Parish School Board ("EBRPSB") on September 11, 2006. (Doc. 40-3 at p. 1). Plaintiff initially served several schools, but in 2010 he was assigned to Winbourne Elementary School ("Winbourne"). (*Id.*) When Plaintiff was assigned to Winbourne, he was informed that he would have to participate in "duty assignments" which consisted of before and after school duty, lunch duty, and aiding students during a "reading block."[1] (*Id.* at p. 2;

---

[1] The before school duty, after school duty, and lunch duty required the faculty of Winbourne, such as Plaintiff, to monitor students in the hallways, classrooms, and cafeteria when arriving to campus in the morning, leaving campus in the afternoon, and during lunch. (*See* Doc. 45-2 at ¶ 3; Doc. 40-9 at p. 2). Reading block appears to be a time when staff worked with students individually to reinforce the students' reading skills. (*See* 35-9 at p. 1; 36-5 at p. 1).

1

Doc. 45-2 at p. 1). Plaintiff indicated that he was uninterested in performing before school duty, lunch duty, and after school duty, because it would interfere with his ability to be a social worker by placing him in a position of authority. (Doc. 40-3 at p. 2). Pivotal to this Motion, these are tasks that Plaintiff alleges require prolonged periods of standing. (*See* Doc. 40-3 at ¶¶18, 20).

In November of 2010, Millie Williams, the Director of Human Resources for Defendant, alleges that Plaintiff began to incur frequent absences, which Plaintiff denies. (Doc. 45-2 at ¶5; Doc. 40-3 at ¶2). On December 2, 2010, Plaintiff submitted his first doctor's note, indicating that he needed to be excused from work for two days. (Doc. 45-2 at ¶6). A second note was submitted on December 10, in support of Plaintiff's requests to be excused for 3 days and that he not be required to engage in prolonged standing. (*Id.* at ¶7). Then on December 22, 2010, Plaintiff's doctor released Plaintiff to return to work with *no restrictions*. (*Id.*). Plaintiff immediately went to a different doctor, and received a note indicating that he was under observation and should not engage in prolonged standing. (*Id.* at ¶8). None of the notes indicated the nature of the disability, nor fully explained its consequences. (*See* Doc. 40-7 at pp. 1-2).

Eventually, on January 27, 2011, the Plaintiff provided medical documentation from his second doctor that indicated that Plaintiff could not engage in prolonged standing due to hypertension and acute sinusitis. (Doc. 45-2 at ¶13). After submitting the paper work, Plaintiff applied for and was granted an extended leave of absence on medical grounds for the remainder of the school year. (*Id.* at ¶14).

Prior to the next school year, Plaintiff was placed on the "displaced workers list," (Doc. 40-3 at ¶¶26-27), meaning that he would not be required to return to Winbourne during that school year, and that the district was required to find him another school to be assigned to within the school district. (Doc. 45-2 at ¶20). Plaintiff was subsequently reassigned to the Exceptional Student Services Department. (Doc. 40-3 at ¶¶28, 34). During that school year, Plaintiff received a satisfactory rating on his evaluations. (*Id.* at ¶30). Further, the record does not indicate that Plaintiff was required to engage in prolonged standing during this placement.

During the 2012-2013 school year, Plaintiff was a subject of a complaint alleging that he was not properly providing services to students.[2] (Doc. 45-2 at ¶24). Additionally, a parent filed a complaint alleging that Plaintiff "engaged in unethical behavior" involving a parent and a student, including potentially forging documents and acting inappropriately during a home visit. (*Id.*; *See* Doc. 37-1 at p. 1-2). On November 5, 2012, Plaintiff was placed on leave with pay pending an investigation of the allegations. (Doc. 45-2 at ¶25). Two investigations were conducted by different departments—one by the Department of exceptional Student Services and the other by the Office of Risk Management. (*Id.* at ¶¶26-27). Both investigations produced evidence that Plaintiff was not properly providing services to students with disabilities. The investigation also concluded that Plaintiff had engaged in unethical conversations with a parent, that he failed to follow department and district

---

[2] The complaints were made by a principal from Southeast Middle School, whose students Plaintiff had been assigned to serve. (*See* Doc. 37-1 at p. 1).

3

procedures, and that he had submitted fraudulent documents.[3] (*Id.*). According to Defendant, these investigations ultimately led to Plaintiff's termination on December 21, 2012. (*Id.* at ¶28).

Plaintiff disputes that he was involved in unethical activity or violated any policy. (Doc. 40-3 at ¶¶38, 51-52; Doc. 40-4 at p. 2). Plaintiff also disputes the factual findings of the investigations, arguing that he was not interviewed, and that the investigations were too one sided. (Doc. 40-3 at ¶¶40-43).

Plaintiff also alleges that the Defendant's conduct, including the termination, was attributable to Plaintiff's filing a charge of discrimination with the EEOC on September 7, 2011, over one year earlier. (Doc. 14-2 at p. 5). He argues that the retaliation consisted of "unfair job assignments, reassignments, and ultimately termination" in January of 2013. (*Id.*). Following his termination, Plaintiff brought suit against Defendant, alleging that the actions of Defendant constituted violations of the Americans with Disabilities Act ("ADA") and the equivalent Louisiana law provision.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing

---

[3] The exact documents that were allegedly fraudulently submitted are not entirely clear from the Williams affidavit; however, the record alleges Plaintiff engaged in unethical conduct, including dishonest statements and manipulation, involving paperwork for the school transfer of a student, (Doc. 37-1 at p. 1-3), and a possible misappropriated letter that had been issued to another social worker. (*See* Doc. 37-2 at P. 1).

4

that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled

5

to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III.  EVIDENTIARY OBJECTIONS

As part of his response to the Motion for Summary Judgment, Plaintiff raises several objections to the Williams affidavit and makes blanket objections to nearly every other piece of evidence submitted by Defendant. (Doc. 40-1 at pp. 1-6). As to Williams, Plaintiff lists the same objection to nearly each of the paragraphs from the affidavit—that the paragraph is not supported by personal knowledge. (*Id.*).[4] In other words, it appears that Plaintiff believes that Williams, the Director of Human Resources and custodian of employment records for Defendant, lacks personal knowledge of Plaintiff's employment for Defendant.

For an affidavit to be considered for summary judgment purposes, it must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4). Further, it is not enough to merely state that the affidavit is based on personal knowledge, but it must be clear that it is so based on the facts described in the affidavit. *See Bright v. Ashcroft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003)("A declarant must provide evidence to establish that he has personal knowledge of the facts stated.").

The Court overrules each of Plaintiff's objections to the Williams affidavit. In her affidavit, Williams indicates that she is the director of Human Resources for Defendant, which demonstrates that she has personal knowledge of Plaintiff's

---

[4] Some of these objections are obviously frivolous. For example, Plaintiff objects that Ms. Williams does not demonstrate she has personal knowledge of a letter, even though she personally signed it on May 9, 2011. (*See* Doc. 38-4; Doc. 40-1 at p. 3). Thus, it is fallacious to claim that the record does not demonstrate that she has personal knowledge of the letter.

6

employment, personnel file, and employment action taken during his time working for Defendant. (*See* Doc. 45-2 at ¶1). It is also clear from Williams' affidavit, that she was an active participant in employment decisions that affected Plaintiff. (*See Id.* at ¶¶29-30). Accordingly, Williams' sworn statements on Plaintiff's employment for Defendant are admissible, and therefore, Plaintiff's objections are overruled.

Next, Plaintiff, in a single paragraph, objects to the next 27 Exhibits. (Doc. 40-1 at pp. 5-6). In that paragraph, Plaintiff raises blanket objects that seem to be related to several exhibits, but fails to state specifically which exhibits the objection applies to. (*Id.*). This is an improper method for raising objections to evidence. According to the advisory committee notes to Federal Rule of Civil Procedure 56, objections on a motion for summary judgment function the same as an objection made to the admissibility of evidence at trial. *See* Fed. R. Civ. P. 56. It is well settled that objections to evidence must be specific by indicating 1) the exact evidence being objected to, and 2) the specific reason for seeking to exclude that item of evidence. *See* Fed. R. Evid. 103; *United States v. Jimenez Lopez*, 873 F.2d 769, 773 (5th Cir. 1989); *Tenenbaum v. United States*, 11 F.2d 927, 929 (5th Cir. 1926).[5] Because the Plaintiff does not offer specific objections and reasons, the Court must overrule Plaintiff's objection to exhibits 2 through 26.

---

[5] Without making specific objections, the Court cannot rule on the objections. For example, Plaintiff objects in one broad statement that all of these exhibits are hearsay. However, to be hearsay the exhibits must seek to be admitted to demonstrate the truth of the matter asserted. Fed. R. Evid. 801. While an exhibit may be an out of court statement, the exhibits may nonetheless be used to prove a matter that is not asserted by them. Without a specific objection that both states the evidence Plaintiff seeks to exclude from admission, and explains how it is being admitted to prove the truth of the matter asserted, the Court cannot properly evaluate Plaintiff's objection.

## IV. DISCUSSION

Plaintiff alleges that 1) Plaintiff was denied a request for a reasonable accommodation, including that Defendant failed to engage in an interactive process to provide a reasonable accommodation, 2) that Plaintiff was subject to work place discrimination because of his disability, and 3) that Plaintiff was retaliated against in violation of the ADA. (Doc. 40 at p. 9). Defendant moves for dismissal of these claims on summary judgment grounds. (Doc. 34-1 at p. 2). Plaintiff argues that he successfully demonstrated that an issue of material fact exists as to whether he brings a claim under the ADA and the equivalent state law, the Louisiana Employment Discrimination Act (LEDL), and thus, the case must proceed to trial. (Doc. 40 at p. 9).

When analyzing the claims brought under the ADA and the Louisiana state law equivalent, this Court has consistently held that the issues that both statutes address are the same, and thus, a single analysis is applicable to both claims. *See Scott v. Turner Indus. Grp., LLC*, No. CIV.A. 09-872, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2011) (applying a single analysis to determine violations of the ADA and the LEDL); *Scott v. Turner Indus. Grp., LLC*, No. CIV.A. 09-872, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2011) (same).[6]

### A. Plaintiff's Reasonable Accommodation Claim

Plaintiff alleges that while employed by Winbourne Elementary School, Defendant failed to provide him a reasonable accommodation for his disability. Under

---

[6] This single analysis does not apply to Plaintiff's retaliation claim because that claim is only brought pursuant to the ADA. (*See* Doc. 14-2 at p. 8).

8

the ADA, discrimination includes the failure to make "reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (*citing* 42 U.S.C. § 12112(a)) (emphasis added). Thus, to prove this claim, the Plaintiff must demonstrate that 1) he is a qualified individual with a disability, 2) that he made the disability and consequences of it known to his employer, and 3) his employer failed to make reasonable accommodations. *Id.* For the purposes of this Motion, the School board does not dispute that Plaintiff meets the first element. (Doc. 34-1 at p. 9-10).

To meet the second element, an employee must not only inform an employer that he is disabled, but must also inform the employer of any specific limitations. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). The burden is on the *employee* to inform the employer. *Id.* at 165. In this case, Plaintiff submitted a series of doctor's notes to Defendant in December of 2010 that indicated that he was under observation, and was provided some work related restrictions while he was under observation. However, the note did not describe the nature and extent of his disability to his employer. (Doc. 45-2 at ¶¶7-11). In fact, one of the doctor's notes indicated that no restrictions were required. (*Id.* at ¶7). It was not until January 27, 2011 that Defendant received a letter from Plaintiff's second doctor that explained that Plaintiff was being treated for chronic sinusitis and malignant hypertension and that he was advised not to engage in prolonged standing. (*Id.* at ¶¶13-14). Thus, it is

clear from the record that on January 27, 2011, the Defendant was notified about the disability and its consequences.

After the medical documentation was submitted, the Defendant provided a reasonable accommodation to Plaintiff. Under the ADA, a reasonable accommodation may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (1990). Initially, the Court notes that the decision to award Plaintiff medical leave, which Plaintiff applied for, reasonably accommodated the Plaintiff's disability while he was employed at Winbourne. (Doc. 45-2 at ¶14). While Defendant could have implemented a less drastic measure, this is the precise accommodation that Plaintiff actually requested so he would be afforded sufficient time to improve his health.

Further, Defendant indicates, and Plaintiff fails to dispute, that Plaintiff's placement on the displaced workers list was a means to explore new assignments for Plaintiff within the school district. (Doc. 34-1 at p. 1). Defendant further indicates that as a result of being placed on this list, Plaintiff was moved to another position within the school district where he was no longer required to engage in prolonged standing, and that he did not suffer any lapse in salary or benefits as a result. (Doc.

10

45-2 at ¶22). In fact, after reassignment, Plaintiff's salary actually increased. (*Id.*). Accordingly, the school district satisfactorily accommodated Plaintiff.

### 1. *Interactive Process*

Plaintiff pleads another theory that could satisfy the third element, namely, that his employer failed to engage in an "interactive process" to determine the specific accommodation that the Plaintiff should have been afforded. (Doc. 14-2 at p. 8). In other words, Plaintiff argues that Defendant should have consulted with Plaintiff with respect to the accommodation that was ultimately provided to him.

"Once an employee has made a request for an accommodation, the ADA's regulations state that 'it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation.'" *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) (*citing* 29 C.F.R. § 1630.2(o)(3)). This process is defined as a *bilateral* discussion, or set of discussions, between the employer and employee. *Id.* at 735-36. The United States Court of Appeals for the Fifth Circuit has held that to sustain a claim on this theory, a plaintiff must demonstrate that "an employer's unwillingness to engage in a good faith interactive process [led] to a failure to reasonably accommodate an employee." *Id.* at 736.

Based on these standards, summary judgment on Plaintiff's interactive process claim is warranted. The Fifth Circuit indicates that to sustain a claim on this theory, the failure to engage in the interactive process must result in a failure to reasonably accommodate the Plaintiff. *See Loulseged*, 178 F.3d at 736. Because the Court has

11

already concluded that Plaintiff was provided a reasonable accommodation while employed—in that he was transferred to another school where he could continue to be employed by Defendant, but not engage in prolonged standing—the Plaintiff cannot sustain a claim for the failure to engage in the interactive process.

Accordingly, Plaintiff's claim that Defendant failed to provide a reasonable accommodation to Plaintiff must be dismissed.

### B. Disability Discrimination Based on a Hostile Work Environment

The Fifth Circuit recognizes a cause of action for work place harassment under the ADA. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 234-35 (5th Cir. 2001). To succeed on this claim, a plaintiff must demonstrate:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Id.* at 235-36.

Defendant argues that Plaintiff cannot demonstrate an issue of material fact as to the fourth element only, because he cannot show that any discrimination he faced was sufficiently pervasive. (Doc. 34-1 at p. 12). "The legal standard for workplace harassment in this circuit is . . . high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). Under the standard "the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236.

12

This standard was developed by the Fifth Circuit in a series of cases. The first of which is *Flowers*, which established the cause of action for hostile work environment claims. *See Id.* In that case, a supervisor discovered an employee had contracted HIV. *Id.* at 236. The supervisor became "very distant," refused to shake the employee's hand, required the employee to participate in four drug tests in a week, lured the employee into meetings on false pretenses where the employer shouted insulting names at the employee, and ultimately, terminated her. *Id.* at 236-38. The Fifth Circuit recognized that such constant, pervasive, and extreme measures demonstrated that the employee was subjected to a hostile work environment because of her disability. *Id.* at 236.

However, in *Gowesky*, the Fifth Circuit cautioned that the standard established in *Flowers* is high, and even a substantial amount of unreasonable actions by the employer may not be actionable. *Gowesky*, 321 F.3d at 509. In *Gowesky*, an employee was exposed to Hepatitis C while working in the hospital where she was employed. *Id.* at 506. When the virus had gone into remission, the employee attempted to return to work. *Id.* However, her employer expressed displeasure at her doing so, and imposed harsh conditions for her return to work, including but not limited to, "that she (a) present a full medical release from her physicians, (b) take a refresher course in emergency medicine, and (c) submit to weekly blood samples." *Id.* at 510. In addition, the employer made disparaging remarks to the employee because of her prior Hepatitis C infection. *Id.* The Fifth Circuit recognized that the conditions were unreasonable, but found that even with the disparaging remarks combined with

13

unreasonable conditions, the employee fell short of meeting the standard of pervasive discrimination under the ADA. *Id.*

In this case, Plaintiff argues that he was subject to discrimination in several forms. He asserts that his efforts to acquire further medical documentation of his disability were met with disparaging comments and remarks. (Doc. 40-3 at ¶¶22, 24). He argues that the school officials demanded that he provide more medical documentation than the doctors' notes. (*Id.* at ¶17). He also argues that he was pressured to continue working on duty assignments by the principal, who expressed displeasure with his inability to do so. (*Id.* at ¶23).

Based on the record, the Court is persuaded that this case must be dismissed. To the extent Defendant committed the acts alleged by the Plaintiff, such conduct cannot reasonably be considered to be the acts of "discrimination." Even assuming that the conduct may, by some broad and liberal definition, be considered acts of discrimination, such acts, if any, fall far lower than even the level of discrimination in *Gowesky*. Further, because Plaintiff cannot demonstrate that any such discrimination had a substantial effect on his employment, which the Fifth Circuit required in *Flowers*, the Court declines to find that Plaintiff can sustain a claim for trial in this case. Accordingly, summary judgment must be granted on Plaintiff's hostile work environment claim.

### C. Retaliation in Violation of the ADA.

Plaintiff's final claim is that Defendant ultimately terminated him because he pursued an ADA claim against the school district for his earlier treatment. (Doc. 14-

2 at p. 8). Defendant argues that Plaintiff cannot demonstrate a *prima facie* case of retaliation, and in the alternative, that there was a legitimate reason to terminate Plaintiff such that Plaintiff cannot show that its actions were mere pretext. (Doc. 34-1 at pp. 13-15).

The Fifth Circuit has adopted a three part test for analyzing retaliation claims brought under the ADA. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "If the employee establishes a *prima facie* case [of retaliation against the employee for participating in a protected activity], the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citation omitted).

To prove a *prima facie* case of retaliation, a plaintiff must demonstrate "that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454. Defendant concedes that the first two elements are met, but argues that Plaintiff cannot demonstrate a causal connection between the termination and the protected activity. (Doc. 34-1 at pp. 13-14).

A plaintiff may demonstrate a causal connection by showing a "very close" temporal proximity between the plaintiff's participation in a protected activity and the adverse employment decision. *Feist*, 730 F.3d at 454. In evaluating this proximity,

the Fifth Circuit has held that "a five month lapse is not close enough without other evidence of retaliation." *Id.* Other evidence that may be produced includes "an employment record that does not support dismissal, or an employer's departure from typical policies and procedures." *Id.* at 454-55. The Fifth Circuit has also recognized that an unwillingness of the final decision maker to engage in an investigation, but to merely "rubber stamp" any proffered reasons for termination, may provide further evidence of the causal link. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

The alleged protected activity that Plaintiff engaged in was the filing of an EEOC complaint on September 7, 2011.[7] (Doc. 14-2 at p. 5). However, he was not terminated until 14 months after filing the complaint. (*See* Doc. 45-2 at ¶28). Thus, the temporal proximity is well beyond the standard set by the Fifth Circuit.

Further, Plaintiff's record is not one that "does not support dismissal." *Feist*, 730 F.3d at 454. Indeed, the record indicates that Plaintiff frequently incurred absences while working for the school district, received unsatisfactory reviews, and that the school district found evidence that he forged documents. (Doc. 45-2 at ¶¶26-27). While Plaintiff disputes each of these claims, the only evidence that Plaintiff presents to contradict these claims are conclusory allegations in Plaintiff's own affidavit that are unsupported by other evidence in the record. This unsupported affidavit, as provided in this case, is insufficient to establish a pretext for

---

[7] Outside of the filing of the initial complaint in September of 2011, there is no other evidence, admission, or pleading in the record that demonstrates Plaintiff participated in a protected activity, such that a jury could determine that Plaintiff's termination 14 months after the filing of the complaint is connected to that act.

16

discrimination. *See Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015).

Here, the Defendant completed two investigations by two different departments prior to Plaintiff's termination. (Doc. 45-2 at ¶26). Thus, this is not a case where the Plaintiff can demonstrate that the decision to terminate his employment was merely a "rubber stamp" without thorough investigation.

In further contradiction of Plaintiff's claim, the record indicates that after filing the complaint, Plaintiff actually received positive reviews and an increase in salary. (Doc. 45-2 at ¶¶22-23). In fact, the period directly after the filing of the EEOC charge appears from the record to be the most positive time of Plaintiff's employment since he was assigned to Winbourne Elementary School. This is well evidenced by submissions from both parties. (*Id.*; Doc. 40-3 at ¶30; Doc. 40-13 at pp. 1-9). It was not until the next school year that the results of the investigations led to his termination for evidence that he was not providing proper services to students, engaged in unethical activity with a parent, and possibly submitted fraudulent documentation. (Doc. 45-2 at ¶¶25-28). Further, Defendant's decision to accede to Plaintiff's request to be accommodated, resulting in a salary hike and his positive performance reviews, contradicts his claim of workplace retaliation.

Even assuming *arguendo* that the Plaintiff could demonstrate a *prima facie* case, the Court holds that the Plaintiff cannot demonstrate that the proffered reasons for firing were pre-textual. In order to demonstrate pre-text, the Fifth Circuit requires that the employee demonstrate that "but for" engaging in the protected activity, the

employer would not have terminated the employee. *Feist*, 730 F.3d at 454. However, in this case multiple investigations into Plaintiff's employment indicated that Plaintiff had engaged in unethical conversations with a parent, that he failed to follow department and district procedures, and that he had submitted fraudulent documents. (Doc. 45-2 at ¶¶26-27). With such considerable reasons to terminate Plaintiff's employment, the Court holds that Plaintiff is unable to demonstrate that he would not have been terminated "but for" his protected activity. Accordingly, Plaintiff fails to demonstrate the third element retaliation.

Thus, Plaintiff's retaliation claim must also be dismissed.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 34)** is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendant are **DISMISSED**.

Baton Rouge, Louisiana, this 27th day of March, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**